**CLEAVES v. PETERBORO BASKET CO.. et al.**

District Court, D. New Hampshire.

Sept. 16, 1931.

Withington, Cross, Proctor & Park, of Boston, Mass., and Henry N. Rice, of Peterborough, N. H., for plaintiff.

McLane, Davis & Carleton and Peter Woodbury, all of Manchester, N. H., for defendants.

MORRIS, District Judge.

This is an action to recover threefold damages under section 4 of the Clayton Act (15 USCA § 15).

The plaintiff is a resident of Rindge, Cheshire county, N. H. The defendant, the Peterboro Basket Company, is a corporation incorporated on or about March 15, 1927, under the laws of New Hampshire having its principal place of business in Peterborough, N. H.

The defendant Winslow C. Morse is a citizen and resident of said Peterborough, and in 1927 he was and still is president, treasurer, and the principal stockholder of the defendant corporation.

It is alleged that the plaintiff and the defendant corporation were in 1927 in competition in trade and commerce among the several states in wood splint baskets. The plaintiff's business was established in 1925 and was conducted until May, 1927, by a copartnership composed of the plaintiff and his brother, and thereafter by the plaintiff alone. Their plant was located at West Rindge, N. H.

The declaration alleges that the sale of their baskets was conducted exclusively by one George F. Hawkins as a del credere factor under a written contract; that said Hawkins had been in the basket business, both as a manufacturer and seller for many years and had a wide acquaintance with the trade; that he was able to sell sufficient quantities of baskets manufactured by the plaintiff to produce profits and warrant the expansion of manufacturing operations; that by reason of a provision in the contract requiring that Hawkins pay for all baskets shipped not later than Wednesday of the week following the order, the contract was of great value to the plaintiff and the continuance of said Hawkins with the plaintiff's business was essential to its success; that Hawkins' sales were made in various states and required the shipment and delivery into various states which constituted trade and commerce among the several states.

The declaration further alleges that the defendant corporation was in 1927 engaged in the manufacture and trade of wood splint baskets, having a manufacturing plant located in Peterborough, and that it also was engaged in interstate commerce; that the defendants met the competition of the plaintiff, and, knowing that the plaintiff would be unable to continue such competition without aid of said Hawkins, conspired to cause said Hawkins to leave the plaintiff's employment, and by such means to exclude the plaintiff from selling baskets both in New Hampshire and among the several states, and thereby to suppress his business; that the defendant corporation reduced its prices for baskets to customers, and the defendant Morse threatened to cause such prices to be reduced to a level which would prevent said Hawkins and the plaintiff from making any sales except at a loss and informed said Hawkins that he had $40,000 which he could use to finance the defendant corporation in carrying on a price war; that Morse proposed to said Hawkins that if he would withdraw from competition the defendant corporation would pay him for his agreement to do so.

It is further alleged that as a result of such acts, threats, and proposals, said Hawkins was induced to enter into a written contract with the defendant corporation on or about May 11, 1927, in which contract said Hawkins for a cash payment of $500, and the promise of further payments hereinafter stated, agreed to refrain from manufacturing or selling such baskets as were made by the defendant corporation in New England for his life either as principal, agent, or employee of any one except the defendant corporation, and from competing directly or indirectly or doing anything to its prejudice.

It is further alleged that the defendant corporation agreed to pay the said Hawkins $500, and for the ensuing six months of 1927 to pay him a commission of ten per cent. on the net selling price of all baskets sold to 157 customers named in a list attached to the agreement, which list comprised nearly all of the plaintiff's important customers.

It is further alleged that, pursuant to the terms of the contract, Hawkins at once ceased selling baskets for the plaintiff, and did not perform any other service under his contract with the plaintiff, and left for California

where he still resides; that the defendant caused to be reported to plaintiff's customers and prospective customers that plaintiff would be unable for lack of working capital to make delivery of baskets ordered.

It is further alleged that by reason of said conspiracy the plaintiff was deprived of his market for his products and deprived of profits reasonably anticipated from the conduct of his business; that his business was destroyed; that he was compelled to cease the manufacture of baskets and to sell a part of such stock as had been manufactured for inadequate prices. The plaintiff demands judgment for threefold damages by him sustained.

The defendant raises the question of jurisdiction and sufficiency of the declaration in the writ in a motion to dismiss the action upon the following grounds:

"4. The said action at law is improperly brought in the District Court of the United States, said court not having jurisdiction of the matter therein complained of."

"5. That said plea of the case attached as a bill of complaint to said writ does not set out a cause of action."

■ The first paragraph is in substance a plea to the jurisdiction. The second paragraph is in substance a demurrer to the declaration. If the declaration sets forth sufficient grounds of complaint within the purview of the Clayton Act, there is no question but that the court has jurisdiction under section 4 of that act (15 USCA § 15), so that the real issue before the court at this time is whether or not the allegations in the writ are sufficient to bring the action within section 4 of the Clayton Act (15 USCA § 15). Upon the issue raised, the allegations contained in the declaration are to be taken as true.

It alleges in the first instance a profitable and lucrative business established by the plaintiff and one Hawkins in the manufacture and sale of wood-splint baskets. It clearly alleges a conspiracy on the part of the defendant to destroy the plaintiff's business by entering into a conspiracy with Hawkins to get him to abandon his contract with the plaintiff, to obtain from him a list of plaintiff's customers both in and without the state of New Hampshire, and interfering with the plaintiff's business by notifying such customers that plaintiff would be unable for lack of working capital to make delivery of baskets ordered.

The declaration further alleges that by reason of defendant's interference with its business, and by reason of the conspiracy alleged, the plaintiff's business has been destroyed and he has been compelled to cease the manufacture of baskets.

This clearly brings the allegations in the writ within the language of the Circuit Court of Appeals for the First Circuit in the case of Mitchell Woodbury Corporation v. Albert Pick Barth Co., Inc., 41 F.(2d) 148, 151, wherein it is said: "If a merger is formed for a lawful purpose, and through the result of increased output and decreased overhead prices can be and are reduced, and as a result a less favored competitor is unable to compete in interstate commerce, no offense results because of the lessened competition. If, however, the merger or combination can be shown to have been formed with the intent to destroy a competitor and suppress its interstate competition and the intent is accomplished, it is within the prohibition of the statute."

■ The allegations in the writ raise questions of fact which, if proven, bring the case within section 4 of the Clayton Act (15 USCA § 15) as construed in the above entitled case. Coming as it does from the circuit court in this circuit, I feel bound by the decision, and therefore the defendant's plea to the jurisdiction must be overruled.

The defendant may have ten days in which to answer.

The case may stand for trial September 30, 1931.